# SUPREME COURT OF THE UNITED STATES

MORRIS COUNTY BOARD OF CHOSEN
FREEHOLDERS, ET AL.
18–364                    *v.*
FREEDOM FROM RELIGION
FOUNDATION, ET AL.

THE PRESBYTERIAN CHURCH IN
MORRISTOWN, ET AL.
18–365                    *v.*
FREEDOM FROM RELIGION
FOUNDATION, ET AL.

ON PETITIONS FOR WRITS OF CERTIORARI TO THE SUPREME
COURT OF NEW JERSEY

Nos. 18–364 and 18–365.   Decided March 4, 2019

The petitions for writs of certiorari are denied.

Statement of JUSTICE KAVANAUGH, with whom JUSTICE ALITO and JUSTICE GORSUCH join, respecting the denial of certiorari.

Morris County, New Jersey, distributes historic preservation funds to help preserve local buildings such as libraries, schoolhouses, performing arts centers, and museums. As part of that program, Morris County also distributes funds to help preserve *religious* buildings such as synagogues, temples, churches, and mosques. But it turns out that New Jersey law, as recently interpreted by the New Jersey Supreme Court, prohibits Morris County from awarding grants to preserve religious buildings.

The petitioners here argue that the State's exclusion of religious buildings—because they are religious—from Morris County's historic preservation program constitutes unconstitutional discrimination against religion in violation of the First and Fourteenth Amendments to the United

States Constitution. The New Jersey Supreme Court concluded that the State's discrimination did not violate the First and Fourteenth Amendments.

In my view, the decision of the New Jersey Supreme Court is in serious tension with this Court's religious equality precedents.

As this Court has repeatedly held, governmental discrimination against religion—in particular, discrimination against religious persons, religious organizations, and religious speech—violates the Free Exercise Clause and the Equal Protection Clause. In the words of Justice Brennan, the "government may not use religion as a basis of classification for the imposition of duties, penalties, privileges or benefits." *McDaniel* v. *Paty*, 435 U. S. 618, 639 (1978) (opinion concurring in judgment). Under the Constitution, the government may not discriminate against religion generally or against particular religious denominations. See *Larson* v. *Valente*, 456 U. S. 228, 244 (1982).

The principle of religious equality eloquently articulated by Justice Brennan in *McDaniel* is now firmly rooted in this Court's jurisprudence. As Justice Kennedy later wrote for the Court, a law may not discriminate against "some or all religious beliefs," and "a law targeting religious beliefs as such is never permissible." *Church of Lukumi Babalu Aye, Inc.* v. *Hialeah*, 508 U. S. 520, 532, 533 (1993). Put another way, the government may not "impose special disabilities on the basis of . . . religious status." *Employment Div., Dept. of Human Resources of Ore.* v. *Smith*, 494 U. S. 872, 877 (1990).

We have applied that bedrock principle of religious equality in numerous cases. See, *e.g, Trinity Lutheran Church of Columbia, Inc.* v. *Comer*, 582 U. S. ___ (2017); *Good News Club* v. *Milford Central School*, 533 U. S. 98 (2001); *Rosenberger* v. *Rector and Visitors of Univ. of Va.*, 515 U. S. 819 (1995); *Lamb's Chapel* v. *Center*

*Moriches Union Free School Dist.*, 508 U. S. 384 (1993); *McDaniel*, 435 U. S. 618.

For example, in *McDaniel*, a Tennessee statute disqualified ministers from serving as delegates to Tennessee's constitutional convention. The Court ruled the statute unconstitutional, explaining that the Constitution does not allow the government to discriminate against religious persons by prohibiting their service in a public office. See 435 U. S., at 629.

In *Good News*, a school district in New York allowed residents to use the local public high school for social, civic, and recreational events. But the school district prohibited a religious organization from using the school, simply because the organization was religious. This Court held that the school district's exclusion of the religious organization was unconstitutional discrimination against religion. See 533 U. S., at 109.

That same principle of religious equality applies to governmental benefits or grants programs in which religious organizations or people seek benefits or grants on the same terms as secular organizations or people—at least, our precedents say, so long as the government does not fund the training of clergy, for example. See *Trinity Lutheran*, 582 U. S., at ___ (slip op., at 13); *Locke* v. *Davey*, 540 U. S. 712, 721, 725 (2004).

In *Trinity Lutheran*, Missouri barred a religious school from obtaining a state funding grant for the school's playground. By contrast, Missouri allowed secular private schools to obtain state funding grants for their schools' playgrounds. This Court held that Missouri's law was unconstitutional. The Court stated that the Constitution "protects religious observers against unequal treatment." 582 U. S., at ___ (slip op., at 6) (alterations omitted). In the Court's description, Missouri's law reflected an unconstitutional policy of "No churches need apply." *Id.*, at ___–___ (slip op., at 13–14). The Court minced no words: Dis-

criminating against religious schools because the schools are religious "is odious to our Constitution." *Id.*, at ___ (slip op., at 15).

In this case, New Jersey's "No religious organizations need apply" for historic preservation grants appears similar to, for example, Missouri's "No religious schools need apply" for school playground grants and New York's "No religious clubs need apply" for use of school facilities and Tennessee's "No ministers need apply" for state office.

To be clear, this is not a case like *Lee* v. *Weisman*, 505 U. S. 577 (1992); *Marsh* v. *Chambers*, 463 U. S. 783 (1983); or *County of Allegheny* v. *American Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U. S. 573 (1989), where the government itself is engaging in religious speech, such as a government-sponsored prayer or a government-sponsored religious display. Nor is this a case like *Burwell* v. *Hobby Lobby Stores, Inc.*, 573 U. S. 682 (2014), or *Smith*, 494 U. S. 872, where a religious group or person is asking for an accommodation or exemption from a generally applicable law. Under the Court's precedents, both of those categories of cases can pose difficult questions. This kind of case, by contrast, should not be as difficult: Barring religious organizations because they are religious from a general historic preservation grants program is pure discrimination against religion.

\*    \*    \*

At some point, this Court will need to decide whether governments that distribute historic preservation funds may deny funds to religious organizations simply because the organizations are religious. But at this point and in this case, it is appropriate to deny certiorari, for two main reasons. First, the factual details of the Morris County program are not entirely clear. In particular, it is not evident precisely what kinds of buildings can be funded under the Morris County program. That factual uncer-

tainty about the scope of the program could hamper our analysis of petitioners' religious discrimination claim. Second, this Court decided *Trinity Lutheran* only recently, and there is not yet a robust post-*Trinity Lutheran* body of case law in the lower courts on the question whether governments may exclude religious organizations from general historic preservation grants programs.

For those reasons, denial of certiorari is appropriate. As always, a denial of certiorari does not imply agreement or disagreement with the decision of the relevant federal court of appeals or state supreme court. In my view, prohibiting historic preservation grants to religious organizations simply because the organizations are religious would raise serious questions under this Court's precedents and the Constitution's fundamental guarantee of equality.